Leave to file GRANTED

*James E. Boasberg*        12/2/22

James E. Boasberg          Date
United States District Judge

# In the US District Court
# For the District of Columbia

| | |
|---|---|
| Hester, Jared | ) |
| Plaintiff | ) |
| | )        21cv3166 |
| v. | )    **Case No.: 1:21-cv-01366-JEB** |
| | ) |
| Paul Public Charter School | ) |
| Defendant | ) |

## Plaintiff's Response to Defendant's Request for a Motion of Summary Judgment

I, the Plaintiff, Jared Hester, am requesting a motion for summary judgment against the Defendant, Paul Public Charter School ("the school"), based on the Defendant's termination of my employment in response to my participation in a protected activity (retaliation), and the school's failure to seek a reasonable accommodation for my two disabilities (failure to accommodate).

My requested redress is back pay from the remainder of the school year and a penalty against the school to represent lost wages, the retaliation, and the failure to accommodate.

## Retaliation

Paul Public Charter School retaliated against me by terminating my employment after I complained internally about the executive staff's use of inaccurate race-based pedagogy and their profession of racist beliefs about myself and students. The school used minor issues in my performance as pretext so that my termination would appear legal under the at-will nature of my work and not violate a civil rights code. The pretextual reasons for the termination included one instance of lateness and a few late lesson plans. Both of these problems stemmed from disabilities I have, which they knew about, but refused to provide accommodations for, despite receiving documentation about them.



**RECEIVED**
12/2/2022

Clerk, U.S. District & Bankruptcy
Court for the District of Columbia

1

1. On December 3, 2020, I told the Assistant Director of HR, Trina Tran, that my supervisor, the vice-principal of the school, Tomiko Graves, had made racist statements about my teaching ability because she saw me as a white person and presumed my first language was Spanish, both of which were affecting my ability to teach[1], and that she had made racist statements about students who are indigenous and black, insisting they are visual learners. (Exhibit A).

2. On December 11, 2020, a meeting took place with Ms. Tran, Ms. Graves, the principal, Shalima Olorunoje, and myself to discuss the incident. Ms. Graves repeated the statements about visual learners, stating they were factual, and stating black boys learning better in competition. Mrs. Olorunoje agreed with Ms. Graves. (Exhibit A).

3. After our return from December Break, Ms. Graves assigned me a Performance Improvement Plan. The delivery of the PIP in proximity to the meeting and my struggles with workplace accommodations led me to decide to write a Letter of Grievance on February 1, 2021 to the CEO of the school, Dr. Tracy Wright, (Exhibit C) as the Employee Manual expressly provides for (Exhibit I, page 11 of the manual).

4. The CEO responded to my letter on February 8, 2021 supporting the executive level staff's usage of racism. Dr. Wright also states, "We have spoken to Ms. Olorunoje and Ms. Graves and received more context for the conversation/meeting in December that you referenced." (Exhibit C).

5. On February 23, 2021, I was late to school because of an over-the-counter remedy I took for anxiety the night before, and had never taken prior. I emailed Mrs. Olorunoje, telling her that I had had a personal emergency. Mrs. Olorunoje replied that I had committed a "severe dereliction of duties" and had abandoned my post. I replied to her that I did not intend to abandon my post, that I had had an emergency, and that I had taught my third period class and would be in attendance for my office hours. She replied with a link

---

[1] I am white and black, and American, and my native language is English.

to a meeting for Friday, February 26, and stated that we would discuss my lateness at that time. However, on that day, she terminated my employment. (Exhibit D, page 1).

6. On February 24, 2021, I emailed Ms. Merkerson explaining that I had had a medical emergency, asking her if she would require a doctor's note, and giving her the document from my therapist to explain the workplace accommodations that I would need. She did not reply to that email at any point ever, including after my termination, but she replied to emails I sent her after my termination about my paycheck. My conclusion is that she participated in the retaliatory firing by not intervening and providing the principal with information about my accommodations (Exhibit D, page 2.)

7. I emailed Ms. Graves that day requesting an extension on my lesson plans, which she granted. (Exhibit D, page 3.)

8. When the principal ended my employment, she claimed that she did so due to me being late one time, due to my lesson plans being late and/or incomplete, and due to my "resistance" to the Performance Improvement Plan. She quoted an excerpt from my Letter of Grievance to the CEO regarding me asking for a "legitimate plan." (Exhibit E, page 4).

9. On February 11, 2021, prior to the firing, the Academic Director of the school, Avise Hayes, informed me of the disciplinary process for missing and late lesson plans, which included a verbal warning, followed by a one-day suspension. I had not been made aware of that disciplinary process, it was not present in the Teacher Handbook, and Ms. Hayes told me it had just begun to be implemented during the second quarter of school. In firing me for missing, late, or incomplete lesson plans, Mrs. Olorunoje skipped a step in the school's disciplinary process. (Exhibit D, page 24 and 25).

10. Immediately after the school terminated me, Ms. Merkerson responded to all of my emails regarding my last paycheck within 24 hours. (Exhibit D, page 2).

11. Records of my performance from Ms. Graves show that my performance was proficient and did not account for the reason for my firing. (Exhibit D, pages 54-65).

12. Reviews from my students and samples of their work do not speak to major problems with my teaching and show success. (Exhibit F).

13. Comments on my lesson plans from my assigned coach and co-worker demonstrate my ability to teach in accordance with the requirements of the school. (Exhibit D, 84-86).

14. The reviews that my NEST coach, and the Assistant Director of HR, Trina Tran, gave me also show that I was able to comply with the school's expectations, and that I was meeting, or sufficiently progressing towards, the school's teaching requirements. (Exhibit D, page 53).

### Failure to Accommodate[2]

1. I informed the school one month after my hiring that I would need workplace accommodations because I had two disabilities, which were Anxiety Disorder and PTSD.

2. The Assistant Director of HR asked me to provide documentation to support my need for accommodations for Anxiety Disorder and PTSD.

3. I provided her a record from my former therapist with the two diagnoses. I blacked out information that was private.

4. Later that day, the director of HR called me. She said that my record looked fake. She also said that if it did turn out I needed workplace accommodations that we would have to have a *much* different conversation (the emphasis added is hers). To me, that implied that, if I needed workplace accommodations, I would be fired.

---

[2] Exhibit B.

4

5. I continued to push for accommodations because my symptoms were very strong, and I felt that they would allow me to do my job, namely, teach while a camera was on my face and complete 10 to 15 highly detailed and unique lesson plans every week for my three classes, which met twice or three times per week.

6. The director of HR and the assistant director of HR told me that I would need to provide a document that specifically named the diagnosis, explain its nature, and explain what accommodations I would need in my workplace.

7. I informed them that I would provide that documentation and express that I understood that until that documentation was given to them that I would not be given a workplace accommodation.

8. That being said, workplace accommodations can come from a number of different sources, so the school could have worked with me considering the information that it had, and considering me asking them for accommodations.

9. The director of HR reached out to me asking for an update on that information and I told her that I was struggling to get in touch with my psychiatrist, which was true. He was very difficult to get in touch with.

10. Eventually, I asked my therapist to write the note for me. And he did write me a note for anxiety disorder only. I submitted that note to the director of HR. And she did not respond to the email that contained that note. That Friday my employment was terminated by the principal.

## Facts about My Hiring, Salary, and Termination

1. I was hired on October 14, 2020.

2. My salary was $57,000 yearly.

3.  I was terminated on February 26, 2021.

4.  After I was terminated, the school did not issue me my check immediately, in compliance with DC law, so I wrote an email to the director of HR asking her to release my check and she did so three days later.

5.  After I was terminated, I wrote a letter about these events to the board of directors and I submitted it to them through Monya Bundy, the executive administrative Assistant of the school. She confirmed that she sent them the letter. (Exhibit E).

6.  I had concurrent part-time employment while I worked with the school. That employment ended in the summer of 2021 because the school closed due to Covid-19.

7.  I continued to apply for work at schools and also in other agencies that were looking for linguists. I was not able to obtain a full-time position until July 2022, which was a salary position at another school in Washington DC. The salary offered there was $72,000.

8.  I landed a part-time position around January, 2022, which was a contract position. I began working on that contract in May, and the contract ended on the last day of June. I was paid $730 a week to teach Spanish classes online to middle school students located in Connecticut. I am currently still employed through that employer, but I have not been given any assignments since June 30, 2022.

### Request for Redress

Based on the events that led to my firing, and the school's refusal to accommodate me for being disabled, I am asking the court to grant a motion of summary judgment against Paul Public Charter School, and require the school to pay me the rest of my salary from the 2020-2021 school year, and an additional penalty, in the suggested amount of $30,000.00, to make up for the six-month period of total employment that I experienced from June 2021 to January 2022, and

the almost one-year period without full-time employment, as well as to penalize the school for failing to accommodate an employee with disabilities that it knew about, and for retaliating against an employee for participating in a protected EEO activity, like reporting race-based and national origin-based harassment and discrimination.

Respectfully signed,

Jared Hester

Pro Se

jrdhester@gmail.com

*Updated Phone Number:* 301-675-0719

*Updated Address:* 411 New York Ave NE

Washington DC, 20002